No. 23-15992

# United States Court of Appeals for the Ninth Circuit

FEDERAL TRADE COMMISSION,
*Plaintiff – Appellant*,

v.

MICROSOFT CORP., and
ACTIVISION BLIZZARD, Inc.,
*Defendants – Appellees.*

—————————————

On Appeal from the U.S. District Court
for the Northern District of California
No. 3:23-cv-2880
The Honorable Jacqueline Scott Corley

—————————————

**BRIEF OF AMICUS CURIAE BUSINESS ROUNDTABLE
IN SUPPORT OF APPELLEES AND AFFIRMANCE**

—————————————

Maureen K. Ohlhausen
Stacy L. Turner
Baker Botts L.L.P.
700 K Street, NW
Washington, DC 20001-5692
(202) 639-7700

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, the Business Roundtable states that it is a non-profit corporation and, as such, no entity has any ownership interest in it.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF CONTENTS ........................................................ii

TABLE OF AUTHORITIES ................................................... iii

INTEREST OF AMICUS CURIAE .............................................1

INTRODUCTION.................................................................2

ARGUMENT ......................................................................3

    I.   The Government Must Contend with the Actual Circumstances Surrounding a Merger, Whether Seeking a Preliminary or Permanent Injunction. ....................................................3

    II.  A Finding of Liability is Not Required to Consider Post-Merger Commitments. .......................................................7

    III. The Legal Standard Used to Evaluate Efficiencies Defenses Does Not Govern the Relevancy or Effect of Post-Merger Commitments. .......................................................9

    IV. Policy Considerations Further Support the Evaluation of Post-Merger Commitments in Preliminary Injunction Proceedings.....11

CONCLUSION ..................................................................14

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*FTC v. Arch Coal, Inc.*,
   329 F. Supp. 2d 109 (D.D.C. 2004) ........................................................5

*FTC v. Libbey, Inc.*,
   211 F. Supp. 2d 34 (D.D.C. 2002) .........................................................6

*FTC v. Meta Platforms Inc.*,
   No. 5:22-CV-04325-EJD, 2022 WL 16637996 (N.D. Cal. Nov. 2, 2022)
   .............................................................................................................7

*FTC v. RAG-Stiftung*,
   436 F. Supp. 3d 278 (D.D.C. 2020) .......................................................6

*FTC v. Sysco Corp.*,
   113 F. Supp. 3d 1 (D.D.C. 2015) ....................................................5, 11

*FTC v. Warner Commc'ns Inc.*,
   742 F.2d 1156 (9th Cir. 1984) .........................................................6, 10

*FTC v. Whole Foods Mkt. Inc.*,
   548 F.3d 1028 (D.C. Cir. 2008) ........................................................8, 9

*United States v. AT&T, Inc.*,
   916 F.3d 1029 (D.C. Cir. 2019) ............................................................4

*United States v. CCC Holdings*,
   605 F. Supp. 2d 26 (D.D.C. 2009) .......................................................6

*United States v. Greater Buffalo Press, Inc.*,
   402 U.S. 549 (1971) ..............................................................................7

*United States v. UnitedHealth Grp., Inc.*,
   630 F. Supp. 3d 118 (D.D.C. 2022) .....................................................3

**STATUTES**

15 U.S.C. § 53(b) ............................................................ 2, 5, 8, 10, 11, 14

15 U.S.C. § 18 ............................................................................... 8

**LEGISLATIVE MATERIALS**

S. Rep. 93-151, 93rd Cong., 1st Sess. 30-31 (1973) .................................... 8

## INTEREST OF AMICUS CURIAE

Business Roundtable[1] represents the chief executive officers
(CEOs) of America's leading companies. The CEO members lead U.S.-
based companies that support one in four American jobs and almost a
quarter of U.S. gross domestic product. The organization's mission is to
promote a thriving U.S. economy and expanded opportunities for all
Americans through sound public policies. Merger and acquisition
activity is an enormous engine of economic growth in the United States,
benefitting businesses of all sizes and their customers. Mergers are
also essential for a dynamic economy: new uses and combinations of
assets, as well as innovative breakthroughs, constantly renew the
intensity of competition to improve offerings to consumers. In order to
maintain the dynamism that is central to a competitive economy, the
United States should not deter procompetitive acquisitions.

---

[1] *Amicus* certifies that counsel of record for FTC, Microsoft, and
Activision have consented to *amicus* filing a brief in support of Microsoft
and Activision. Fed. R. App. P. 29(a)(2). No party's counsel authored
this brief in whole or in part, and no person—other than *amicus*, its
members, or its counsel—contributed money that was intended to fund
preparation or submission of this brief. Fed. R. App. P. 29(a)(4)(E).

1

## INTRODUCTION

In declining to grant the FTC's motion to preliminarily enjoin Microsoft's proposed acquisition of Activision, the district court held that the FTC failed to meet the requirements of Section 13(b) of the FTC Act, 15 U.S.C. § 53(b): to show a likelihood of success on the merits that the merger may substantially lessen competition. The district court's decision took note of contracts that bind Microsoft to provide Activision's *Call of Duty* to cloud gaming competitors, a factor pertinent to the FTC's vertical foreclosure theory. While not essential to the district court's decision, 1-ER-39, it was proper for the court to consider the legally binding commitments entered by Microsoft when weighing the FTC's ultimate likelihood of success on the merits.

The FTC's assertion that merging parties' "proposed remedies" are irrelevant at the preliminary injunction stage and must not be considered until after a merits determination of liability (FTC Opening Br. 45-46) is incorrect. Post-merger market realities—such as those resulting from binding agreements of the parties—are directly relevant to whether a plaintiff is likely to succeed in showing that the transaction will result in a substantial lessening of competition. Any

2

contention that the district court "usurped" the FTC's authority (FTC Opening Br. 46, 57) by considering such market conditions is inaccurate and without basis in the law.

Additionally, strong policy reasons support courts' practice of considering post-merger market realties, rather than merely hypothetical concerns, when determining whether to preliminarily enjoin a transaction. Adhering to these policies and practices will help ensure that procompetitive acquisitions are not deterred.

## ARGUMENT

### I. The Government Must Contend with the Actual Circumstances Surrounding a Merger, Whether Seeking a Preliminary or Permanent Injunction.

The market realities surrounding a merger are no less pertinent to a preliminary injunction analysis than they are to a merits determination. Courts have repeatedly concluded that merging parties' binding contractual commitments are relevant because they may impact the likelihood that the merger will result in a substantial lessening of competition. *See, e.g., United States v. UnitedHealth Grp., Inc.,* 630 F. Supp. 3d 118, 139-51 (D.D.C. 2022) (evaluating vertically integrated firm's post-merger commitments, including customer

3

contracts and firewalls); *United States v. AT&T, Inc.,* 916 F.3d 1029, 1041 (D.C. Cir. 2019) (holding merged firm's contractual obligations with downstream competitors rendered vertical foreclosure concerns "largely irrelevant").

The FTC asserts that such cases are not dispositive here because they dealt with a permanent injunction proceeding rather than a preliminary injunction proceeding. FTC Opening Br. 49-50. As such, the FTC contends, the consideration of proposed remedies in those matters was appropriate only because liability was being determined in the same proceeding. *Id.* However, these cases, because they dealt with requests for permanent injunction, did not address whether post-merger commitments are relevant in the preliminary injunction setting, and they certainly did not preclude the relevance of such commitments in the preliminary injunction setting. Instead, these cases underscore the fact that when examining a merger, courts must evaluate the circumstances surrounding the merger as they actually exist, not how they would exist if no remedy offer or other post-merger commitments were present. As demonstrated by these cases, commitments by the merging parties can be dispositive to the liability analysis, thus such

4

commitments are directly relevant to the FTC's ultimate likelihood of success.

Moreover, it is well established that courts should and do evaluate the competitive impact of parties' post-merger commitments in preliminary injunction proceedings. In *FTC v. Arch Coal, Inc.*, for instance, the court expressly rejected the FTC's contention that it was improper to consider a defendant's post-merger commitments in a preliminary injunction proceeding. *See* 329 F. Supp. 2d 109, 115 n.2 (D.D.C. 2004) (disagreeing with FTC's argument that it was improper to consider post-merger divestiture agreement). In so doing, the court held that "even Section 13(b) cases must be resolved on the basis of the record evidence relating to the market and its probable future." *Id.* at 116-117. Likewise, the court in *FTC v. Sysco Corp.* analyzed defendants' proposed divesture of assets in assessing whether the FTC met its burdens under Section 13(b). 113 F. Supp. 3d 1 (D.D.C. 2015) (concluding divestiture agreement was insufficient to resolve competition concerns). Notably, recognizing the relevance of the proposed divestiture on the competitive effects assessment, the FTC's own economic expert adjusted their market share analysis to account

5

for the divestiture. *See id.* at 53-54. *See also, FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34, 45-46 (D.D.C. 2002) (evaluating revised merger agreement following amendments intended to address FTC's competition concerns); *FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278 (D.D.C. 2020) (denying preliminary injunction based partly on post-merger divestiture commitment). Courts have not limited the consideration of post-merger commitments to divestitures or other structural changes; post-merger contractual commitments also are relevant to the preliminary injunction analysis. *See United States v. CCC Holdings*, 605 F. Supp. 2d 26 (D.D.C. 2009) (assessing competitive impact of revising licenses to eliminate exclusivity).

The FTC's argument that post-merger commitments are properly limited to a full trial on the merits belies longstanding precedent. Such an approach would allow the FTC to escape its burden of showing that "the Commission will ultimately succeed on the merits," as required to secure a preliminary injunction. *FTC v. Warner Comm'ns Inc.,* 742 F.2d 1156, 1160 (9th Cir. 1984) (citations omitted). In weighing the likelihood of success on the merits, courts "are charged with exercising their 'independent judgment' and evaluating the FTC's case and

6

evidence on the merits." *FTC v. Meta Platforms Inc.,* No. 5:22-CV-04325-EJD, 2022 WL 16637996, at *5 (N.D. Cal. Nov. 2, 2022) (citation omitted). Thus, a court's evaluation of the evidence relating to actual post-merger market realties neither creates a new burden for the FTC, nor does it improperly usurp the FTC's authority.

## II. A Finding of Liability is Not Required to Consider Post-Merger Commitments.

In support of its argument that "[p]roposed remedies should be considered only after a finding of liability, at the remedy stage of the subsequent merits proceeding," the FTC relies on *United States v. Greater Buffalo Press, Inc.*, 402 U.S. 549, 556 (1971). Specifically, the FTC points to language from the opinion noting that "the trial court, having found no liability, 'naturally did not reach the question of remedy.'" FTC Opening Br. 48 (quoting *Greater Buffalo Press*, 402 U.S. at 556). The FTC's reliance on *Greater Buffalo Press* is inapposite. In that case, the district court did not decline to evaluate the efficacy of the proposed remedy because doing so was improper. Rather, the court declined to evaluate the remedy because it concluded the merger did not violate Section 7 of the Clayton Act (15 U.S.C. § 18), thus consideration of any remedy was moot.

7

The decision upon which the FTC relies says nothing about when courts may properly consider post-merger agreements. Indeed, at the time of that decision, the FTC lacked the authority to pursue preliminary injunctions. Prior to the enactment of Section 13(b) in 1973, the agency only could seek to permanently enjoin a merger following a full trial on the merits.[2] In such circumstances, naturally a court would not have the opportunity to evaluate the adequacy of potential remedies absent a finding of liability. The case simply does not speak to the propriety of evaluating post-merger commitments in a preliminary injunction setting.

It is similarly misguided to cite to *FTC v. Whole Foods Mkt. Inc.,* 548 F.3d 1028 (D.C. Cir. 2008) in defense of the proposition that remedies or other commitments are an appropriate consideration only after a liability determination. In *Whole Foods*, the parties consummated their merger after the government's unsuccessful motion

---

[2] *See* S. Rep. 93-151, 93rd Cong., 1st Sess. 30-31 (1973) (noting the purpose of the rule was to "to permit the Commission to bring an immediate halt to unfair or deceptive acts or practices when to do so would be in the public interest. At the present time such practices might continue for several years until agency action is completed.")

8

to secure a preliminary injunction. In reversing and remanding the case for further review, the circuit court recognized the difficulties of unraveling a merger, but noted the futility of crafting a remedy to unwind the transaction before it was even deemed unlawful. *Whole Foods,* 548 F.3d at 1033-34 ("Of course, neither court nor agency has found Whole Foods's acquisition of Wild Oats to be unlawful. Therefore, the FTC may not yet claim the right to have any remedy necessary to undo the effects of the merger, as it could after such a determination") (citation omitted). The court did not hold that it was improper to consider commitments before a finding of liability. The court merely recognized that the government has *no right to* remedial action before a finding of liability. The fact that it is premature to impose remedies prior to a finding of liability does not mean it is improper to consider post-merger commitments at the preliminary injunction stage.

## III. The Legal Standard Used to Evaluate Efficiencies Defenses Does Not Govern the Relevancy or Effect of Post-Merger Commitments.

The FTC, describing this Court's approach to evaluating efficiencies as one of "skepticism," asserts that this Court must evaluate the impact of post-merger commitments with comparable skepticism.

FTC Opening Br. 50.  The FTC cites to no authority to justify this position, and it cannot do so because this is not the legal standard.  On the contrary, to prevail in a Section 13(b) proceeding, the FTC must "raise questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals." *Warner,* 742 F.2d at 1162 (citations omitted).  As noted by the district court, courts require "such a rigorous analysis because 'the issuance of a preliminary injunction prior to a full trial on the merits is an extraordinary and drastic remedy.'"  Op. 22 (citation omitted).  Applying the skeptical lens called for by the FTC would be antithetical to the approach applied by courts and would controvert the burdens imposed by Section 13(b).

Where post-merger commitments are not presented as efficiencies, it is erroneous for a court evaluate them as such.  At issue here is whether it is proper to consider the competitive impact of post-merger commitments (i.e., whether and how those agreements impact the FTC's ultimate likelihood of success on the merits), not whether those

10

agreements present efficiencies sufficient to justify a merger that lessens competition.

## IV. Policy Considerations Further Support the Evaluation of Post-Merger Commitments in Preliminary Injunction Proceedings.

The policy considerations underlying Section 13(b) and the precedent interpreting it further support the evaluation of the defendants' post-merger commitments. Because a preliminary injunction is "an extraordinary and drastic remedy," Section 13(b) "demands rigorous proof to block a proposed merger or acquisition." *Sysco*, 113 F. Supp. 3d at 23 (quotation and citation omitted). This high hurdle was imposed "because the issuance of a preliminary injunction blocking an acquisition or merger may prevent the transaction from ever being consummated." *Id.* (quotation and citation omitted). With these considerations in mind, permitting the FTC to present its case with no assessment of post-merger commitments is problematic on multiple fronts. The court's analysis would be based on a hypothetical transaction that differs from what the merging parties are proposing. Not only would this disregard market realties, it also would ignore the FTC's burden of providing "rigorous proof" about the impact of the

11

actual transaction at issue. And despite concerns about unnecessarily thwarting mergers at the preliminary injunction stage, this approach would result in parties abandoning transactions even where their post-merger commitments clearly would resolve any theorized competition issues.

Avoiding the waste of judicial resources also calls for courts to evaluate the transaction as proposed, whether that includes proffered remedies or, as in the instant case, enforceable contracts germane to the competition concerns identified. There is no legal basis to require a court to limit its analysis to an artificially narrow set of facts during the preliminary injunction proceeding, reserving consideration of certain highly relevant facts until the merits proceeding. Courts are tasked with evaluating market realities, not artificial scenarios of the FTC's making.

Additionally, because merger and acquisition activity undergirds economic growth and innovation in the U.S. and spurs competition that benefits businesses of all sizes and their customers, merging parties should be encouraged to pursue solutions to resolve competition concerns potentially raised by any transaction. Requiring courts to

disregard these solutions as part of the preliminary injunction analysis significantly reduces the merging parties' incentive proactively to address any competition concerns, and ultimately may deter procompetitive transactions.

## CONCLUSION

For the foregoing reasons, this Court should hold that the district court properly considered Microsoft's binding contractual obligations when evaluating whether the FTC met its burdens under Section 13(b) of the Federal Trade Commission Act.


Dated: September 13, 2023          Respectfully submitted,


s/ Maureen K. Ohlhausen
Maureen K. Ohlhausen
Stacy L. Turner
Baker Botts L.L.P.

*Attorneys for Amicus Curiae Business Roundtable*


14

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____23-15992_____

I am the attorney or self-represented party.

**This brief contains** __2,332_____ **words,** including __0_____ words manually

counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and

typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ X ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or
Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** ___s/Maureen K. Ohlhausen_____ **Date** ___September 13, 2023_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which sent notification of such filing to all registered attorneys of record.

Dated: September 13, 2023

s/ Maureen K. Ohlhausen
Maureen K. Ohlhausen