**No. 23-15992**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellant*,

v.

MICROSOFT CORP., and
ACTIVISION BLIZZARD, INC.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-cv-02880-JSC; Hon. Jacqueline Scott Corley

## BRIEF OF AMICUS CURIAE TECHFREEDOM
## IN SUPPORT OF APPELLEES
## AND AFFIRMANCE

Bilal Sayyed
*Counsel of Record*
Andy Jung
TECHFREEDOM
1500 K Street NW Floor 2
Washington, DC 20005
(771) 200-4497
bsayyed@techfreedom.org
ajung@techfreedom.org

September 13, 2023

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amicus TechFreedom states that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

Dated: September 13, 2023

/s/Bilal Sayyed
Bilal Sayyed
TECHFREEDOM
1500 K Street NW Floor 2
Washington, DC 20005
(771) 200-4497
bsayyed@techfreedom.org
*Attorney for*
*Amicus Curiae TechFreedom*

i

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................iii

INTERESTS OF AMICI ............................................................... 1

ARGUMENT ........................................................................ 3

    I.    In Evaluating the Commission's Request for a Preliminary Injunction, the District Court Correctly Considered the Commission's Reasonable Probability of Prevailing on the Merits After an Administrative Trial........ 3

    II.    The District Court Correctly and Properly Applied the *Baker Hughes* Framework to Evaluate the Commission's Request for a Preliminary Injunction ............. 7

    III.    Consideration of Efficiency Claims Is a Required Step in the Evaluation of a Preliminary Injunction Request....... 12

    IV.    Vertical Mergers May Generate Significant Procompetitive Benefits.......................................... 18

    V.    The District Court Was Correct to Consider the Merging Parties' Contractual Commitments to Address Commission Concerns about Foreclosure ............................ 21

CONCLUSION ..................................................................... 26

CERTIFICATE OF COMPLIANCE ........................................... 1

CERTIFICATE OF SERVICE ................................................ 2

# TABLE OF AUTHORITIES

**Statutes**

15 U.S.C. § 53(b) .................................................................................. 3

**Cases**

*FTC v. Arch Coal, Inc.,*
   329 F. Supp. 2d 109 (D.D.C. 2004).................................................. 6, 22

*FTC v. CCC Holdings,*
   605 F. Supp. 2d 26 (D.D.C. 2009) ................................................. 10, 22

*FTC v. Foster,*
   2007 WL 1793441 (D.N.M. 2007) ............................................... 6, 10, 18

*FTC v. Heinz,*
   246 F.3d 708 (D.C. Cir. 2001) .................................................. 4, 8, 9, 15

*FTC v. LabCorp.,*
   2011 WL 3100372 (C.D. Cal. Feb. 22, 2011) ............................. 6, 10, 17

*FTC v. Libbey, Inc.,*
   211 F. Supp. 2d 34 (D.D.C 2002) ....................................................... 22

*FTC v. Meta Platforms Inc.,*
   2023 WL 2346238 (N.D. Cal. Feb. 3, 2023) .......................................... 6

*FTC v. Microsoft,*
   2023 WL 4443412 (N.D. Cal. July 10, 2023) ........................................ 7

*FTC. v. Microsoft Corp.,*
   No. 23-15992 (9th Cir. July 13, 2023) .................................................. 3

*FTC v. OSF Healthcare Sys.,*
   852 F. Supp. 2d 1069 (N.D. Ill. 2012).............................................. 10, 17

*FTC v. Peabody Energy,*
   492 F. Supp. 3d 865 (E.D. Mo. 2020) ............................................. 10, 16

iii

*FTC v. Penn State Hershey Med. Ctr.*,
838 F.3d 327 (3d Cir. 2016) ............................................................. 9, 15

*FTC v. Rag-Stiftung*,
436 F. Supp. 3d 278 (D.D.C. 2020) ............................................. 6, 10, 22

*FTC v. Sanford Health*,
926 F.3d 959 (8th Cir. 2019) ............................................................ 8, 15

*FTC v. Staples*,
190 F. Supp. 3d 100 (D.D.C. 2016) ...................................................... 10

*FTC v. Steris Corp.*,
133 F. Supp. 3d 962 (N.D. Ohio 2015) .................................................... 6

*FTC v. Sysco*,
113 F. Supp. 3d 1 (D.D.C. 2015) ................................................ 10, 17, 22

*FTC v. Tenet Health Care Corp.*,
186 F.3d 1045 (8th Cir. 1999) ............................................................. 15

*FTC v. Thomas Jefferson Univ.*,
505 F. Supp. 3d 522 (E.D. Pa. 2020) ........................................... 6, 10, 16

*FTC v. Tronox Ltd.*,
332 F. Supp. 3d 187 (D.D.C. 2018) .................................................. 10, 17

*FTC v. University Health*,
938 F.2d 1206 (11th Cir. 1991) .................................................. 9, 13, 14

*FTC v. Warner Commc'ns Inc.*,
742 F.2d 1156 (9th Cir. 1984) ....................................................... 3, 4, 11

*FTC v. Whole Foods Mkt., Inc.*,
548 F.3d 1028 (D.C. Cir. 2008) ............................................................. 5

*FTC v. Wilh. Wilhelmsen Holding ASA*,
341 F. Supp. 3d 27 (D.D.C. 2018) .................................................. 10, 16

*In the Matter of Gen. Elec. Co.*,
  No. C-4411 (F.T.C. Aug. 27, 2013) ........................................ 25

*In the Matter of Microsoft/Activision*,
  No. 9412 (F.T.C. Dec. 8, 2022) ................................................ 3

*In the Matter of Northrop Grumman Corp. & Orbital ATK, Inc.*,
  No. C-4652 (F.T.C. Dec. 3, 2018) .......................................... 24

*St. Alphonsus Med. Ctr. NAMPA v. St. Luke's*,
  778 F.3d 775 (9th Cir. 2015) .................................................. 16

*In the Matter of Teva Pharma. Indus. & Allergan PLC*,
  No. C-4589 (F.T.C. Sept. 7, 2016) .......................................... 25

*United States v. Anthem*,
  855 F.3d 345 (D.C. Cir. 2017) .................................................. 7

*United States v. AT&T*,
  310 F. Supp. 3d 161 (D.D.C. 2018) .................................. 13, 23

*United States v. AT&T*,
  916 F.3d 1029 (D.C. Cir. 2019) ...................................... Passim

*United States v. Baker Hughes*,
  908 F.3d 981 (D.C. Cir. 1990) ............................................ 8, 14

*In the Matter of Valero, L.P.*,
  No. C-4141 (F.T.C. July 22, 2005) ........................................ 24

## Other Authorities

Background Note by the Secretariat, OECD,
  Vertical Mergers in the Technology, Media and Telecom Sector
  (June 7, 2019) ........................................................................ 20

Bilal Sayyed, *Actual Potential Entrants, Emerging Competitors, and the
  Merger Guidelines: Examples from FTC Enforcement 1993-2022* (Dec.
  20, 2022) ................................................................................ 2

Carl Shapiro and Herbert Hovenkamp, *How Will the FTC Evaluate Vertical Mergers*, ProMarket (Sept. 23, 2021) ................................ 12, 13

Federal Rule of Appellate Procedure 29(a)(4)(E) ...................................... 1

Federal Trade Commission, *The FTC's Merger Remedies 2006-2012, A Report of the Bureaus of Competition and Economics* (Jan. 2017) ...... 25

U.S. DEPT. OF JUST. & FTC, VERTICAL MERGER GUIDELINES (June 30, 2020) ....................... 12, 19, 20

# INTERESTS OF AMICI[1]

TechFreedom is a nonprofit, nonpartisan think tank based in Washington, D.C. TechFreedom's employees have extensive expertise on the laws and regulations enforced by the Federal Trade Commission.

Bilal Sayyed, Senior Competition Counsel for TechFreedom, served as Director of the Office of Policy Planning at the FTC from 2018 to 2021. The Office of Policy Planning (OPP) initiated and managed the Chairman's Hearings on Competition and Consumer Protection in the 21st Century during his tenure. Following the Hearings, staff of the Bureaus of Competition and Economics and OPP, working with the Department of Justice, drafted the 2020 VERTICAL MERGER GUIDELINES and the 2020 FEDERAL TRADE COMMISSION COMMENTARY ON VERTICAL MERGER ENFORCEMENT. Additionally, under his leadership, the Commission inquired into over 500 acquisitions by Google, Facebook, Amazon, Apple, and Microsoft. Sayyed has continued to focus on mergers

---

[1] Under Federal Rule of Appellate Procedure 29(a)(4)(E), amici declare that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting the brief; and no person—other than amici or their counsel— contributed money intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

and the FTC as Senior Competition Counsel at TechFreedom. *See, e.g.,* Bilal Sayyed, *Actual Potential Entrants, Emerging Competitors, and the Merger Guidelines: Examples from FTC Enforcement 1993-2022* (Dec. 20, 2022), https://ssrn.com/abstract=4308233.

## ARGUMENT

**I.    In Evaluating the Commission's Request for a Preliminary Injunction, the District Court Correctly Considered the Commission's Reasonable Probability of Prevailing on the Merits After an Administrative Trial**

Section 13(b) of the Federal Trade Commission Act allows the Commission to obtain a preliminary injunction in advance of an administrative trial seeking to permanently enjoin a merger. 15 U.S.C. § 53(b). Here, the Commission seeks to preliminarily enjoin the consummation of Microsoft's acquisition of Activision, prior to its determination of whether to prohibit "any transaction between Microsoft and Activision that combines their business, except as may be approved by the Commission." Complaint, *In the Matter of Microsoft/Activision*, No. 9412 (F.T.C. Dec. 8, 2022); Motion for an Injunction Pending Appeal of the Federal Trade Commission, *FTC. v. Microsoft Corp.*, No. 23-15992 (9th Cir. July 13, 2023).

In its review of the Commission's request for a preliminary injunction, the court "must 1) determine the likelihood that the Commission will ultimately succeed on the merits and 2) balance the equities." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984). "To determine likelihood of success on the merits, [the court]

measure[s] the probability that, after an administrative hearing on the merits, the Commission will succeed in proving that the effect of the [merger] 'may be substantially to lessen competition, or to tend to create a monopoly' in violation of Section 7 of the Clayton Act." *FTC v. Heinz*, 246 F.3d 708, 714 (D.C. Cir. 2001). Both the Ninth Circuit and the D.C. Circuit interpret this standard to require that the Commission "raise[ ] questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1162 (9th Cir. 1984). *FTC v. Heinz*, 246 F.3d 708, 714 (D.C. Cir. 2001) (same).

This language does not eliminate the requirement that the Commission show a likelihood of ultimate success in its later effort to permanently enjoin the transaction through an administrative hearing. Before granting a request for a 13(b) preliminary injunction, the court must evaluate the Commission's arguments and evidence in the context of the applicable Section 7 case law to evaluate whether there is a "reasonable probability of anticompetitive effect." *Warner Commc'ns Inc.*,

742 F.2d at 1160. Merging parties may rebut any presumption that attaches to the agency's success in raising serious, substantial, difficult, or doubtful questions. *FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1035 (D.C. Cir. 2008). Notably, in a vertical merger, "the government cannot use a short cut to establish a presumption of anticompetitive effect . . . because vertical mergers produce no immediate change in the relevant market share." *United States v. AT&T*, 916 F.3d 1029, 1032 (D.C. Cir. 2019).

Neither the district court nor the appellate court is required to "rubber-stamp an injunction whenever the FTC provides some threshold evidence"; rather, the courts "must exercise independent judgment" and "evaluate the FTC's chance of success on the basis of all evidence before it, from the defendants as well as from the FTC." *Whole Foods Mkt., Inc.*, 548 F.3d at 1035. "[M]erging parties are entitled to oppose [a request for a preliminary injunction] with their own evidence, and that evidence may force the FTC to respond with a more substantial showing." *Id.*

Contrary to the Commission's argument that it is owed significant deference and that the district court should not seriously scrutinize its allegations, district courts frequently find that the Commission has not

met its burden, and therefore deny requests for a 13(b) injunction. *See, e.g., FTC v. Meta Platforms Inc.*, 2023 WL 2346238 (N.D. Cal. Feb. 3, 2023); *FTC v. Thomas Jefferson Univ.,* 505 F. Supp. 3d 522 (E.D. Pa. 2020); *FTC v. Rag-Stiftung*, 436 F. Supp. 3d 278 (D.D.C. 2020); *FTC v. Steris Corp.*, 133 F. Supp. 3d 962 (N.D. Ohio 2015); *FTC v. LabCorp.*, 2011 WL 3100372 (C.D. Cal. Feb. 22, 2011); *FTC v. Foster*, 2007-1 Trade Cas. (CCH) ¶¶ 75,725 (D.N.M. 2007); *FTC v. Arch Coal, Inc.,* 329 F. Supp. 2d 109 (D.D.C. 2004).

The Commission argues that the district court improperly considered the ultimate merits of the proposed merger rather than merely determining whether the Commission was entitled to a preliminary injunction pending its review of the transaction in an administrative proceeding. This argument rests on far too thin a reed. To support this claim, the Commission invokes the district court's occasional citation to merger cases where the Department of Justice sought a permanent, rather than preliminary, injunction. The only way that the District Court can consider the Commission's likelihood of ultimate success on the merits is to gauge how its evidence will be judged against the law that is applicable in that proceeding.

## II.   The District Court Correctly and Properly Applied the *Baker Hughes* Framework to Evaluate the Commission's Request for a Preliminary Injunction

Here, the district court adopted the *Baker Hughes* framework for its evaluation of the FTC's likelihood of success on the merits—the required showing of "reasonable probability." *FTC v. Microsoft*, No. 23-cv-02880JSC, 2023 WL 4443412, *8, *12 (N.D. Cal. July 10, 2023). This framework was used by the district court and accepted as proper by the appellate court in *United States v. AT&T*, 916 F.3d 1029, 1032 (D.C. Cir. 2019), the government's first litigated challenge to a purely vertical merger in forty years, as well as in the review of a recent merger with both horizontal and vertical effects, *United States v. Anthem*, 855 F.3d 345, 349-50 (D.C. Cir. 2017).[2]

The Commission appears to argue that the use of the *Baker Hughes* framework, which requires an inquiry into the strength of the plaintiff's evidence, and consideration of the defendant's rebuttal to the plaintiff's

---

[2] *United States v. AT&T*, 916 F.3d 1029, 1032 (D.C. Cir. 2019) and *United States v. Anthem*, 855 F.3d 345,349-50 (D.C. Cir. 2017) were permanent injunction matters. As we discuss later, infra at § II, notwithstanding the Commission's concerns about the legal standard applied, this framework is used in preliminary injunction merger cases too.

evidence of anticompetitive harm, goes beyond the district court's authority in a preliminary injunction hearing. It does not.

In *Baker Hughes*, the D.C. Circuit articulated a now broadly-accepted approach to evaluating the government's challenge to a horizontal merger:

> The basic outline of a Section 7 horizontal acquisition case is familiar. By showing that a transaction will lead to undue concentration in the market for a particular product in a particular geographic area, the government establishes a presumption that the transaction will substantially lessen competition. The burden of producing evidence to rebut this presumption then shifts to the defendant. If the defendant successfully rebuts the presumption, the burden of producing additional evidence of anticompetitive effects shifts to the government, and merges with the ultimate burden of persuasion, which remains with the government at all times. *United States v. Baker Hughes*, 908 F.3d 981, 982-983 (D.C. Cir. 1990) (internal citations omitted).

"Although *Baker Hughes* was a permanent injunction matter," courts "can nonetheless use its analytical approach in evaluating the Commission's showing of likelihood of success." *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 715 (D.C. Cir. 2001); *accord FTC v. Sanford Health*, 926 F.3d 959, 962, 964-66 (8th Cir. 2019) (to evaluate the FTC's request for a preliminary injunction in an acquisition of a health care company, "the district court employed . . . *Baker Hughes*" and, after considering the

parties' rebuttal arguments, properly enjoined the merger, pending an administrative trial); *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 337 (3d Cir. 2016) (in a review of a district court decision not to grant the Commission's request for a preliminary injunction in the merger of competing hospitals, the appellate court "assess[ed] Section 7 claims" under the *Baker Hughes* framework and, after reviewing the merging parties' rebuttal arguments, reversed the district court); *FTC v. Heinz*, 246 F.3d 708, 714-15 (D.C. Cir. 2001) (in evaluating whether the FTC was entitled to a preliminary injunction in the intended merger of two baby-food companies, the appellate court evaluated whether the FTC "raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance" using the approach of *Baker Hughes*, notwithstanding that "*Baker Hughes* was decided at the merits stage as opposed to the preliminary injunction relief state."); *FTC v. University Health*, 938 F.2d 1206, 1218-19 (11th Cir. 1991) (evaluating the district court's denial of the Commission's request for a preliminary injunction in a merger of hospitals, using the *Baker Hughes* framework to evaluate whether the FTC "raise[d] questions

9

going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation and study by the FTC in the first instance").

District courts routinely apply the *Baker Hughes* framework when the Commission seeks a preliminary injunction in merger matters. *See FTC v. Thomas Jefferson Univ.,* 505 F. Supp. 3d 522, 538 (E.D. Pa. 2020); *FTC v. Peabody Energy*, 492 F. Supp. 3d 865, 883, 907-18 (E.D. Mo. 2020); *FTC v. Rag-Stiftung*, 436 F. Supp. 3d 278, 290-91 (D.D.C. 2020); *FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 44-45 (D.D.C. 2018); *FTC v. Tronox Ltd.*, 332 F. Supp. 3d 187, 197 (D.D.C. 2018); *FTC v. Staples*, 190 F. Supp. 3d 100, 115-116 (D.D.C. 2016); *FTC v. Sysco*, 113 F. Supp. 3d 1, 23-4 (D.D.C. 2015); *FTC v. OSF Healthcare Sys.*, 852 F. Supp. 2d 1069, 1074-75 (N.D. Ill. 2012); *FTC v. LabCorp.*, 2011 WL 3100372, at *21 (C.D. Cal. Feb. 22, 2011); *FTC v. CCC Holdings*, 605 F. Supp. 2d 26, 36 (D.D.C. 2009); *FTC v. Foster*, 2007-1 Trade Cas. (CCH) ¶¶ 75,725, 2007 WL 1793441, *52-53 (D.N.M. 2007).

As noted above, unlike in a horizontal merger case, in a vertical merger "the government cannot use a short cut to establish a presumption of anticompetitive effect . . . because vertical mergers

produce no immediate change in the relevant market share." *United States v. AT&T*, 916 F.3d 1029, 1032 (D.C. Cir. 2019). In establishing its prima facie case—the first *Baker Hughes* step—the Commission must provide fact-specific evidence for a showing of possible harm before the burden shifts to the defendants to rebut the Commission's prima facie case. Here, the district court found the Commission failed to establish its prima facie case, and, so finding, declined to preliminarily enjoin the transaction.

"The denial of a motion for preliminary injunction will be reversed only if the district court abused its discretion or based its decision on an erroneous legal premise." *Warner Commc'ns*, 742 F.2d 1156, 1160 (9th Cir. 1984). The appellate and district courts that have applied the *Baker Hughes* framework to the review of Commission requests for preliminary injunctions did not do so in error. The *Baker Hughes* framework is simply a structured mode of analysis to review the parties' factual evidence and arguments. The Commission mistakes the district court's adoption of the *Baker Hughes* framework for an adoption of a merits-based analysis; this court should not adopt the Commission's error as its own. The use of the *Baker Hughes* framework was not legal error or an abuse of discretion.

## III. Consideration of Efficiency Claims Is a Required Step in the Evaluation of a Preliminary Injunction Request

The Commission argues that it was improper for the district court to consider efficiencies associated with the transaction in the evaluation of its preliminary injunction request. The Commission confuses a procompetitive effect of the transaction with an "efficiencies defense," where an anticompetitive harm is traded off against a benefit. The Commission's attempt to label the benefits of transaction in the markets at issue as "efficiencies" does not mean that they are being considered as a defense to an otherwise anticompetitive transaction.[3]

---

[3] The discussion of the procompetitive effects of vertical mergers in the government's Vertical Merger Guidelines distinguishes between procompetitive effects derived from the alignment, through merger, of economic incentives between the vertically situated firms, and efficiencies that may arise from mergers of horizontal competitors (or that may result from reasons unrelated to the aligning of economic incentives of the vertically situated firms). The incentive to foreclose competitors is derived from the same economic incentives that support procompetitive effects of vertical integration; they are not separate effects. U.S. DEPT. OF JUST. & FTC, VERTICAL MERGER GUIDELINES (June 30, 2020), at 11. On September 15, 2021, over the objections and dissent of two Commissioners, the FTC withdrew its approval of the 2020 Vertical Merger Guidelines. The Department of Justice has not withdrawn its adoption of the 2020 Vertical Merger Guidelines. The basis for the FTC's withdrawal from the guidelines, and the majority Commissioners' understanding of the procompetitive effects arising from vertical mergers, was sharply questioned by commentators. *See, e.g.,* Carl

The district court decision makes clear that there was no prospect of competitive harm from the transaction. And the district court's two references to the term "efficiencies" does not change that. In one instance, discussing possible presumptions in vertical merger cases, the district court notes that "many vertical mergers create vertical integration efficiencies" (citing to the district court opinion in *United States v. AT&T*, 310 F. Supp. 3d 161, 192 (D.D.C. 2018), *aff'd.*, 916 F.3d 1029, 1032 (D.C. Cir. 2019)). In the second instance, the district court summarizes a holding in *FTC v. Univ. Health, Inc.*, 938 F.2d 1206, 1272 (11th Cir. 1991). Neither reference supports the Commission's view that the district court relied on an efficiencies defense or claim to deny the request for a preliminary injunction. In short, the Commission's arguments about improper reliance or consideration of efficiencies by the district court are not germane.

Setting aside the factual reality of this case, the Commission is also wrong on the law, because efficiency claims are properly considered in a

---

Shapiro and Herbert Hovenkamp, *How Will the FTC Evaluate Vertical Mergers*, ProMarket (Sept. 23, 2021), https://www.promarket.org/2021/09/23/ftc-vertical-mergers-antitrust-shapiro-hovenkamp/. The Commission repeats their past errors here.

13

Section 13(b) proceeding. "It is a foundation of section 7 doctrine . . . that evidence on a variety of factors can rebut a prima facia case." *Baker Hughes*, 908 F.3d 981, 984 (D.C. Cir. 1990). The Commission argues that the evaluation of efficiencies "should [be], at a minimum, deferred to the merits stage" and thus excluded from the merging parties' rebuttal arguments. The Commission's position is not supported by merger case law.

Appellate courts have considered efficiency claims in mergers since at least the FTC's request to preliminary enjoin University Health's proposed acquisition of the assets of a competing hospital. *FTC v. Univ. Health, Inc.*, 938 F.2d 1206 (11th Cir. 1991). "[I]n certain circumstances, a defendant may rebut the government's prima facie case with evidence showing that the intended merger would create significant efficiencies in the relevant market." *Id.* at 1222. To the Eleventh Circuit, it was "clear that whether an acquisition would yield significant efficiencies in the relevant market is an important consideration in predicting whether the acquisition would substantially lessen competition. . . . [E]vidence that a proposed acquisition would create significant efficiencies benefiting

14

consumers is useful in evaluating the ultimate issue—the acquisition's overall effect on competition." *Id*.

In the thirty years since *University Health*, other appellate courts have made clear that the evaluation of efficiency claims is a component of their review of a preliminary injunction request. S*ee, e.g.*, *FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1054-55 (8th Cir. 1999) (in a preliminary injunction matter, the court stated that "the evidence shows that a hospital that is larger and more efficient . . . will provide better medical care than either of those hospitals could separately."); *FTC v. Sanford Health*, 926 F.3d 959, 965 (8th Cir. 2019) (in preliminary injunction matter, efficiency claims relevant to the competitive effects analysis); *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 347 (3rd Cir. 2016) (to overturn a district court's denial of a preliminary injunction against the merger of two hospitals, the Commission "must show either that the combination would not have anticompetitive effects or that the anticompetitive effects of the merger will be offset by extraordinary efficiencies resulting from the merger."); *FTC v. H.J. Heinz*, 246 F.3d 708, 720 (D.C. Cir. 2001) (in a preliminary injunction matter, the court noted a "trend among lower courts . . . to recognize the [efficiency] defense").

*See also St. Alphonsus Med. Ctr. NAMPA v. St. Luke's*, 778 F.3d 775, 790 (9th Cir. 2015) (in the review of a consummated merger, this court noted that, "because Section 7 of the Clayton Act only prohibits those mergers whose effect 'may be substantially to lessen competition,' a defendant can rebut a prima facie case with evidence that a proposed merger will create a more efficient combined entity and thus increase competition").

Similarly, district courts routinely consider efficiencies in preliminary injunction matters. *See, e.g.*, *FTC v. Thomas Jefferson Univ.*, 505 F. Supp. 3d 522, 538 (E.D. Pa. 2020) (defendants can rebut presumption by showing "that the anticompetitive effects of the merger will be offset by extraordinary efficiencies resulting from the merger."); *FTC v. Peabody Energy*, 492 F. Supp. 3d 865, 913 (E.D. Mo. 2020) ("even if evidence of efficiencies alone is insufficient to rebut the government's prima facie case, such evidence may nevertheless be relevant to the competitive effects analysis of the market required to determine whether the proposed transaction will substantially lessen competition.") (internal quotation marks eliminated); *FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 71-72 (D.D.C. 2018) ("efficiencies produced by a merger can form part of a defendant's rebuttal of the FTC's prima facie

case . . . but the court must undertake a rigorous analysis of the kinds of efficiencies . . . in order to ensure that those efficiencies represent more than mere speculation and promises about post-merger behavior") (internal citations omitted); *FTC v. Tronox Ltd.*, 332 F. Supp. 3d 187 (D.D.C. 2018) ("When a court finds high market concentration levels, defendants must present proof of extraordinary efficiencies to rebut the government's prima facie case. . . . To be able to offset a merger's likely anticompetitive effects, purported synergies and efficiencies must represent more than mere speculation and promises about post-merger behavior.") (internal citations omitted); *FTC v. Sysco*, 113 F. Supp. 3d 1, 81 (D.D.C. 2015) ("efficiencies resulting from the merger may be considered in rebutting the governments prima facie case"); *FTC v. OSF Healthcare Sys.*, 852 F. Supp. 2d 1069, 1089 (N.D. Ill. 2012) ("The court has thoroughly reviewed the claimed efficiencies in this case and the expert testimony from both sides and is compelled to conclude that, at least for the purpose of these proceedings, defendants have failed to present sufficient proof of the type of 'extraordinary efficiencies' that would be necessary to rebut the FTC's strong prima facie case."); *FTC v. LabCorp.*, 2011 WL 3100372, ¶ 164 (C.D. Cal. Feb. 22, 2011) ("In

evaluating the legality of a merger or acquisition under section 7, courts consider the procompetitive benefit of efficiencies related to the transaction."); *FTC v. Foster*, 2007-1 Trade Cas. (CCH) ¶¶ 75,725, 245 (D.N.M. 2007) ("The Defendants have, however, rebutted this presumption with proof of ease of entry, cognizable efficiencies, or other recognized defenses.")

Although not at issue here, no harm flows from analyzing the efficiency claims of the merging parties at the preliminary injunction stage; it is a necessary component of determining the Commission's ultimate likelihood of success.

## IV. Vertical Mergers May Generate Significant Procompetitive Benefits

Because vertical mergers bring together complementary, and not competing assets, there is no presumption of harm from vertical mergers. *See United States v. AT&T*, 916 F.3d 1029, 1032 (D.C. Cir. 2019) ("unlike horizontal mergers, the government cannot use a short cut to establish a presumption of anticompetitive effect through statistics about the change in market concentration, because vertical mergers produce no immediate change in the relevant market share. Instead, the government must make a 'fact-specific' showing that the proposed merger is 'likely to be

anticompetitive.'") (citations omitted). Part of that fact-specific showing is an analysis of whether the procompetitive effects associated with the aligning of the economic incentives do or do not address anticompetitive effects that may arise from the same aligning of economic interests.

Vertical integration through a merger is likely to have procompetitive effects and create procompetitive efficiencies. The government's own Vertical Merger Guidelines recognize this:

> Vertical mergers combine complementary economic functions and eliminate contracting frictions, and therefore have the capacity to create a range of potentially cognizable efficiencies that benefit competition and consumers. Vertical mergers combine complementary assets, including those used at different levels in the supply chain, to make a final product. A single firm able to coordinate how these assets are used may be able to streamline production, inventory management, or distribution. It may also be able to create innovative products in ways that would not likely be achieved through arm's-length contracts.[4]

> Due to the elimination of double marginalization, mergers of vertically integrated firms will often result in the merged firm's incurring lower costs for the upstream input than the downstream firm would have paid absent the merger. This is because the merged firm will have access to the upstream

---

[4] U.S. DEPT. OF JUST. & FTC, VERTICAL MERGER GUIDELINES (June 30, 2020), at 11 (emphasis added). On September 15, 2021, over the objections and dissent of two Commissioners, the FTC withdrew its approval of the 2020 Vertical Merger Guidelines. The Department of Justice has not withdrawn its adoption of the 2020 Vertical Merger Guidelines.

input at cost, whereas often the downstream firm would have paid a price that included a markup. ... Mergers of firms that make complementary products can lead to a pricing efficiency analogous to the elimination of double marginalization. Absent the merger, the merging parties would set the price for each complement without regard to the impact of lower prices for one on demand for the other. If the two merge, the merged firm has an incentive to set prices that maximize the profits of the firm as a whole, which may result in lower prices for each component.[5]

Similarly,

Vertical integration has two main direct or first-order efficiency effects. Firstly, it improves vertical co-ordination between the downstream and upstream units of the firm, by enabling the two units to internalize the impact of their business decisions on each other's profit; secondly, it induces cost savings through economies of scope, by allowing the merging parties to share costs that are common to the different stages of the productive process. In contrast, the risk that vertical integration enhances market power ... is an indirect or *second-order* effect, as it depends on some additional anti-competitive behaviour taking place post-merger. ... The theoretical and empirical evidence that vertical integration creates efficiency effects largely explains why vertical mergers are generally presumed to be welfare enhancing and to pose substantially fewer competition concerns than horizontal mergers." For a vertical merger to decrease consumer welfare, it would be necessary that the *second-order* effect of enhanced market power overcomes the *first-order* efficiency gains from both vertical co-ordination and economies of scope.[6]

---

[5] Id. at 11-12.

[6] Background Note by the Secretariat, OECD, Vertical Mergers in the Technology, Media and Telecom Sector (June 7, 2019), at 27, https://one.oecd.org/document/DAF/COMP(2019)5/en/pdf.

The evaluation of the potential competitive effect of a vertical transaction must treat possible benefits and possible harms as symmetrical: the reasonableness, verifiability, and merger-specificity required to show likelihood of future, post-merger procompetitive effects and post-merger efficiencies should be no greater than the reasonableness, verifiability, merger-specific competitive harms underlying the Commission's concern in a vertical merger. In a vertical merger, a respondent should be required only to show there is a reasonable probability it will obtain its claimed efficiencies and procompetitive effects.

## V.   The District Court Was Correct to Consider the Merging Parties' Contractual Commitments to Address Commission Concerns about Foreclosure

The Commission argues the district court improperly considered the parties' offer (and subsequent commitments) to license certain content to other firms as part of its analysis of the Commission's preliminary injunction request. The Commission proposes to upend accepted law on this point. The court should not accept this proposal, as it is unnecessary for the disposition of this matter; here, the district court made clear that the contractual commitments of Microsoft were not

necessary to its finding that the Commission was unlikely to succeed in its effort to permanently enjoin the transaction. 1-ER-39.

The Commission asks this court to ignore the common practice of district courts, which consistently consider the remedial effect of offers or commitments by merging parties in preliminary injunction proceedings. See *FTC v. Rag-Stiftung*, 436 F. Supp. 3d 278, 304 (D.D.C. 2020) ("Defendants have met their burden of showing that [purchaser] will replace [acquired entity's] competitive intensity."); *FTC v. Sysco*, 113 F. Supp. 3d 1, 73-78 (D.D.C. 2015) (parties' proposed divestiture insufficient to address competitive concerns); *FTC v. CCC Holdings*, 605 F. Supp. 2d 26, 56-59 (D.D.C. 2009) (analyzing curative divestiture); *FTC v. Arch Coal, Inc.,* 329 F. Supp. 2d 109, 115 n. 2, 147-149 (D.D.C. 2004) (simultaneous transfer of coal mine to third party to ameliorate competitive concerns would be evaluated as part of the challenged transaction; buyer's plan to increase coal mine production post-merger would leave total overall industry production largely the same); *FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34, 45-47 (D.D.C 2002) ("parties to a merger agreement can abandon that agreement and propose a new one in an effort to address the government's concerns. And, when they do so . . . it

becomes the new agreement that the Court must evaluate in deciding whether an injunction should be issued.").

The court here should not adopt the Commission's position. Ignoring the potential effect of contracts that reasonably and responsibly address the Commission's competitive concerns, even at the preliminary injunction stage, is likely to waste administrative and judicial resources. Competitive concerns in vertical mergers are often remedied by contractual or behavioral commitments. In *AT&T,* the district court found that a contractual commitment by Time Warner/AT&T to offer its post-merger rivals access to entertainment content addressed the government's competitive concerns. There, the district court properly incorporated Turner Broadcasting's irrevocable offers of no-blackout arbitration agreements into its analysis of the potential anticompetitive effects of the vertical merger of AT&T (distribution) and Time-Warner (content). *United States v. AT&T*, 310 F. Supp. 3d 161 (D.D.C. 2018), *aff'd* 916 F.3d 1029 (D.C. Cir 2019). The government had alleged the combined firm would threaten to withhold content from AT&T's competitors, but the court found that Turner Broadcasting's "irrevocable offers of no-blackout arbitration agreements mean[] the merger is unlikely to afford

Turner Broadcasting increased bargaining leverage." 916 F.3d at 1042-1043.

The Commission's position here is inconsistent with its general practice of accepting contractual/behavioral solutions to competitive concerns in non-horizontal mergers. For example, in *Northrop Grumman-Orbital ATK*, the Commission required Northrop to commit to non-discrimination provisions in its dealing with competitors to Orbital. Decision and Order at § II, *In the Matter of Northrop Grumman Corp. & Orbital ATK, Inc.*, No. C-4652 (F.T.C. Dec. 3, 2018). In *Valero-Kaneb*, the Commission alleged that Valero's post-merger operation of certain Kaneb refined petroleum product terminals would give Valero, a bulk supplier of refined petroleum products, the incentive and ability to foreclose access by its competitors to Kaneb's terminals. To address its concerns, the Commission entered into a consent order with Valero requiring that it, among other things, operate the terminals in a reasonable and non-discriminatory way. Decision and Order at § VI, *In the Matter of Valero, L.P.*, No. C-4141 (F.T.C. July 22, 2005). In *Teva-Allergan*, a transaction with both horizontal and vertical aspects, the Commission had concerns that the combined firm would have the incentive and ability to withhold

supply of active pharmaceutical ingredients from current or future competitors. As a narrow remedy, the FTC required Teva to enter into supply agreements with respect to all users of any of eight active pharmaceutical ingredients, at pre-acquisition pricing, in commercial quantities, with related services provided consistent with past practice. Decision and Order at § IV, *In the Matter of Teva Pharma. Indus. & Allergan PLC*, No. C-4589 (F.T.C. Sept. 7, 2016). In *General Electric/Avio*, the Commission required the adoption of a firewall to prevent the sharing of competitively sensitive information. Decision and Order at §§ III, IV, V, *In the Matter of Gen. Elec. Co.*, No. C-4411 (F.T.C. Aug. 27, 2013). *See also* Federal Trade Commission, *The FTC's Merger Remedies 2006-2012, A Report of the Bureaus of Competition and Economics* (Jan. 2017), at Table 1 (showing the Commission accepted non-structural remedies in 100% of their settlements of concerns in non-horizontal mergers). The Commission considers its remedies successful if they maintain or restore competition in the relevant market. All non-structural remedies in non-horizontal merger matters reviewed for the report were, in fact, considered successful. *Id.* at 1-2.

## CONCLUSION

The Court should affirm the district court's denial of the Commission's motion for a preliminary injunction.

Date: September 13, 2023                    Respectfully submitted,

/s/ Bilal Sayyed
Bilal Sayyed

/s/ Andy Jung
Andy Jung

TECHFREEDOM
1500 K Street NW Floor 2
Washington, DC 20005
(771) 200-4497
bsayyed@techfreedom.org
ajung@techfreedom.org

26

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32-1 because it contains 5,077 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This Brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/Bilal Sayyed
Bilal Sayyed
TECHFREEDOM
1500 K Street NW Floor 2
Washington, DC 20005
(771) 200-4497
bsayyed@techfreedom.org
*Attorney for Amicus Curiae TechFreedom*

**CERTIFICATE OF SERVICE**

I certify that on September 13, 2023, I filed the foregoing Amicus Brief with the Court's appellate CM/ECF system. Counsel for Plaintiff-Appellant and Counsel for Defendant-Appellees are registered users of the Court's appellate CM/ECF system. I further certify that an electronic copy of the foregoing was emailed to counsel for Plaintiff-Appellant and Defendant-Appellees at their registered email addresses.

/s/Bilal Sayyed
Bilal Sayyed
TECHFREEDOM
1500 K Street NW Floor 2
Washington, DC 20005
(771) 200-4497
bsayyed@techfreedom.org
*Attorney for Amicus Curiae TechFreedom*

Date: September 13, 2023