

2001 M Street NW, 10th Floor
Washington, DC 20036

WWW.WILKINSONSTEKLOFF.COM
———
A LIMITED LIABILITY PARTNERSHIP

October 13, 2023

**VIA ECF FILING**

Molly C. Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 Seventh Street
San Francisco, CA 94103

      **Re: *Federal Trade Commission v. Microsoft Corp.*, No. 23-15992**

Dear Ms. Dwyer:

      Pursuant to FRAP 28(j), Appellees advise the Court that on October 13, 2023, (1) the UK Competition & Markets Authority ("CMA") granted final approval to Microsoft and Activision's revised merger, and (2) the merger closed. Ex.A; *see, e.g.*, *Univ. Trading v. Kiritchenko*, 346 F.App'x 232, 233 n.1 (9th Cir. 2009) (judicial notice of foreign rulings); A.B.25 n.5 (same for subsequent case developments).

      The CMA's decision provides an independent basis for affirmance. Activision, prior to the merger's closing, divested global cloud streaming rights to all existing console and PC games, and those produced over the next fifteen years, to an independent gaming company, Ubisoft. Ex.A ¶¶ 7, 25; *see FTC v. Libbey, Inc.*, 211 F.Supp.2d 34, 46 (D.D.C. 2002) (must consider amended merger). Microsoft accordingly does not own or control cloud-gaming rights for any Activision titles streamed in the United States (as well as the UK and other jurisdictions). Ex.A ¶¶ 7, 27. Microsoft also agreed to undertakings, backed by law, to (among other things) not interfere with Ubisoft's cloud streaming rights, and to provide Ubisoft with versions of Activision games that are, with respect to "quality, content, features and performance … the same in all material respects to the non-streaming version[s] of such games." Ex.B. ¶¶ 2.1(a), (c); *see* Ex.C (CMA decision accepting undertakings).

      The CMA's decision further explains that Microsoft's pre-existing commitments to regulators and third parties remain intact. Ex.A ¶ 7 n.6. The only exception to the divestiture described above is cloud streaming rights in the European Economic Area, which Microsoft retained to comply with its regulatory commitments to the European Commission. *Id.* Microsoft also obtained a license from Ubisoft narrowly tailored to facilitate Microsoft's output-expanding cloud gaming agreements with third-party businesses, several of which are incorporated into the European Commission commitments and thus backed by law. *See id.*; A.B.15-16, 56-61 & n.16 (discussing binding commitments).

      Taken together, these actions eliminate any possible claim that Microsoft will withhold Activision content from rivals in the alleged cloud streaming market. *See* Ex.A ¶¶ 27-28 (CMA's conclusion that any competitive issues associated with the merger have been fully addressed).

      Respectfully submitted,

      Rakesh Kilaru

Encl:  Exhibit A, Anticipated acquisition by Microsoft Corporation of Activision Blizzard (excluding Activision Blizzard's non-EEA cloud streaming rights), Decision on Consent Under the Final Order (Oct. 13, 2023), *available at* https://assets.publishing.service.gov.uk/media/652864062548ca000dddf22d/Full_text_decision__final_order_.pdf

      Exhibit B, Undertakings given by Microsoft Corporation and Activision Blizzard, Inc. to the Competition and Markets Authority pursuant to section 73 of the Enterprise Act 2022 (October 13, 2023), *available at* https://assets.publishing.service.gov.uk/media/652863c72548ca0014ddf20a/Final_UILs_-_13_October_2023_-_Publication_Version.pdf

      Exhibit C, Anticipated acquisition by Microsoft Corporation of Activision Blizzard (excluding Activision Blizzard's non-EEA cloud streaming rights), Decision on Acceptance of Undertakings in Lieu of Reference (Oct. 13, 2023), *available at* https://assets.publishing.service.gov.uk/media/652863e32548ca0014ddf20b/Full_text_decision__final_acceptance_of_UILs_.pdf