# EXHIBIT A



# Anticipated acquisition by Microsoft Corporation of Activision Blizzard (excluding Activision Blizzard's non-EEA cloud streaming rights)

## DECISION ON CONSENT UNDER THE FINAL ORDER

The CMA's decision to consent to Microsoft Corporation acquiring Activision Blizzard, Inc. (excluding Activision Blizzard's non-EEA cloud streaming rights) under paragraph 12 of the Microsoft and Activision Merger Inquiry Order 2023 made by the CMA pursuant to section 84 of the Enterprise Act 2002, given on 13 October 2023. Full text of the decision published on 13 October 2023.

## Summary

1. The CMA has decided to give Microsoft Corporation (**Microsoft**) consent to acquire Activision Blizzard, Inc. (**Activision**) (the **Parties**) excluding Activision's cloud streaming rights outside of the European Economic Area (**EEA**) (the **Merger**) subject to the condition that the sale of Activision's cloud streaming rights completes prior to completion of the Merger. As set out below, this consent is required as a result of the CMA's **Final Order** prohibiting Microsoft's acquisition of the whole of Activision (the **First Proposed Merger**).[1]

2. This **Consent Decision** is separate from the decisions on:[2]

    (a) Whether it is or may be the case that the Merger creates a relevant merger situation that may be expected to result in a substantial lessening of competition (**SLC**) in any market or markets in the UK under section 33(1) of the Enterprise Act 2022 (the **Act**) (the **Phase 1 Decision**); and

---

[1] See The Microsoft and Activision Merger Inquiry Order 2023.
[2] See Microsoft / Activision Blizzard (ex-cloud streaming rights) merger inquiry.



(b) whether to accept the undertakings in lieu of reference (**UILs**) offered by the Parties under section 73(2) of the Act (the **UIL Final Acceptance Decision**); and

3. Nevertheless, the Phase 1 Decision and UIL Final Acceptance Decision have been relevant to the Consent Decision.

## Background

4. On 18 January 2022, Microsoft entered into an agreement to acquire the whole of Activision. The First Proposed Merger was subject to an in-depth phase 2 investigation by the CMA, with the CMA's Final Report published on 26 April 2023 (the **Final Report**).[3]

5. The Final Report found that, following the First Proposed Merger, Microsoft would have the ability and incentive to use Activision's content to foreclose current and future rival cloud gaming service platforms and that, as a result, the First Proposed Merger may be expected to result in an SLC in cloud gaming services in the UK. The Final Report found that prohibition of the First Proposed Merger was the only effective and proportionate remedy to this SLC and any adverse effects which may be expected to result from the SLC.

6. On 22 August 2023, the CMA issued its Final Order prohibiting the First Proposed Merger.[4] Under paragraph 12 of the Final Order, Microsoft may not acquire an interest in Activision or any entity holding an interest in Activision for 10 years without the CMA's prior written consent.[5]

7. Microsoft has since agreed to acquire Activision excluding Activision's non-EEA cloud streaming rights. Immediately prior to the Merger, pursuant to a divestiture agreement between Activision and Ubisoft Entertainment SA (**Ubisoft**) (the **Ubisoft Divestment Agreement**), Activision's global cloud streaming rights (excluding the

---

[3] Final Report.
[4] The Microsoft and Activision Merger Inquiry Order 2023. At the same time, the CMA announced its rejection of Microsoft's submissions that there had been a material change of circumstances since the publication of the CMA's Final Report or that there were otherwise special reasons for reaching a different decision in relation to the remedy for the First Proposed Merger under section 41(3) of the Act: see Final decision on possible material change of circumstances/special reasons.
[5] Paragraph 13 provides that Activision may not acquire an interest in Microsoft or any entity holding an interest in Microsoft for 10 years without the CMA's prior written consent. As the Merger concerns the acquisition by Microsoft of Activision (excluding Activision's non-EEA cloud streaming rights), the CMA is not considering the question of consent under that provision in this decision.



EEA) for all current and future Activision PC and console games released during the next 15 years (the **Activision Streaming Rights**), will be divested to Ubisoft.[6]

8. The Merger may not proceed without the prior written consent of the CMA under paragraph 12 of the Final Order.

9. On 22 September 2023, the CMA published its Phase 1 Decision relating to the Merger. In that decision, the CMA stated that it believes that it is or may be the case that (i) arrangements are in progress or in contemplation which, if carried into effect, will result in the creation of a relevant merger situation; and (ii) the creation of that situation may be expected to result in an SLC within a market or markets in the United Kingdom.[7] Specifically, the CMA believes that it is or may be the case that the Merger may be expected to result in an SLC as a result of vertical effects in cloud gaming services in the UK.

10. On 21 September 2023, the Parties offered UILs to the CMA for the purposes of section 73(2) of the Act.

11. On 22 September 2023, the CMA gave notice to the Parties, pursuant to section 73A(2)(b) of the Act, that it considers that there are reasonable grounds for believing that the undertakings offered, or a modified version of them, might be accepted by the CMA under section 73(2) of the Act and that it is considering the Parties' offer (the **UIL Provisional Acceptance Decision**).[8]

12. Following a consultation on the Parties' UILs, the CMA decided to accept the UILs offered by the Parties pursuant to section 73(2) of the Act, and on 13 October 2023 published its UIL Final Acceptance Decision.[9]

## Microsoft's request for consent to the Merger

13. Microsoft approached the CMA on 23 August 2023 requesting consent under paragraph 12 of the Final Order for the Merger to proceed.[10]

---

[6] Ubisoft will also receive a non-exclusive licence to sell, distribute, and sublicense entitlements to play cloud streaming versions of Activision's games in the EEA. At the same time, Microsoft will receive a non-exclusive licence from Ubisoft for cloud streaming rights to the extent necessary for Microsoft to fulfil its obligations under its commitments to the European Commission and certain existing third-party cloud streaming agreements.
[7] Available on the case page: Microsoft / Activision Blizzard (ex-cloud streaming rights) merger inquiry.
[8] Available on the case page: Microsoft / Activision Blizzard (ex-cloud streaming rights) merger inquiry.
[9] Available on the case page: Microsoft / Activision Blizzard (ex-cloud streaming rights) merger inquiry.
[10] Application for consent for Microsoft to acquire Activision Blizzard under the Microsoft and Activision Merger Inquiry Order 2023, 23 August 2023 (**the Consent Application**).



14. Microsoft submitted that, in circumstances where the CMA ultimately approves the Merger, either unconditionally or subject to UILs, the CMA would have satisfied itself that the cloud gaming SLC which the Final Order was designed to remedy would not be expected to arise as a result of the Merger. According to Microsoft, in such circumstances it would be incumbent upon the CMA to also grant consent for the Merger under the Final Order and a failure to do so would be irrational.[11]

15. Microsoft submitted that granting consent would be the natural and appropriate consequence of a decision to approve the Merger, either unconditionally or subject to UILs. According to Microsoft, where the Merger has been approved there will be no basis for the particular terms of a prior order to preclude the completion of the Merger. Microsoft submitted that the effectiveness of the Final Order in achieving its original aim will not be undermined by granting consent if the cloud gaming SLC detailed in the Final Report will not arise as a result of the Merger. According to Microsoft, in those circumstances no further justification for the grant of consent would be necessary.[12]

16. Microsoft further submitted that, in any event, the divestment of the Activision Streaming Rights to Ubisoft would also amount to a change in circumstances since the Final Report. According to Microsoft, as a result of that change in circumstances, there is no prospect that the cloud gaming SLC detailed in the Final Report will arise, such that it would be appropriate to grant consent for the Merger.[13]

**Considering Microsoft's request**

17. In order to consider and decide Microsoft's request for consent under the Final Order, the CMA set up the Microsoft and Activision Merger Inquiry Order Sub-Committee.

---

[11] Consent Application, paragraph 1.4.
[12] Consent Application, paragraph 1.7.
[13] Consent Application, paragraph 1.8. Microsoft submitted more broadly that the divestment of the Activision Streaming Rights eliminates the competitive concerns the Final Order was designed to address. Microsoft submitted that the divestment is a substantial modification of the merger prohibited by the Final Order, and comprehensively addresses the cloud gaming SLC detailed in the Final Report and its adverse effects. Microsoft submitted that the new arrangements comprehensively remove Microsoft's ability to engage in an input foreclosure strategy as a result of the Merger and that it has no means of offering Activision Blizzard games on Xbox Cloud Gaming in the UK without licensing the rights from Ubisoft (Consent Application, Section C). The CMA refers to the Phase 1 Decision, where the CMA found a realistic prospect of an SLC in cloud gaming services in the UK as a result of the Merger, and the UIL Final Acceptance Decision.



18. The CMA's approach to determining whether to grant consent under an undertaking or order will depend on the terms of a particular undertaking or order and the individual circumstances affecting it.

19. In determining whether to give consent under the Final Order in this case, the CMA has considered whether allowing the Merger, together with the UILs offered, by granting this consent would undermine the effectiveness of the Final Order, in terms of meeting its aim to remedy the SLC in the market for cloud gaming services in the UK and its resulting adverse effects as detailed in the Final Report. The Consent Decision is separate from and without prejudice to the Phase 1 Decision described above and the CMA's UIL Final Acceptance Decision.[14] However, the Phase 1 Decision and the CMA's UIL Final Acceptance Decision are relevant to the consent considerations.

20. The scope of the CMA's Consent Decision is limited to determining whether or not to grant consent under paragraph 12 of the Final Order for Microsoft and Activision to implement the Merger.

**Third-party views**

21. Between 22 September 2023 and 6 October 2023, the CMA consulted on whether to give consent to the Merger under paragraph 12 of the Final Order. This consultation was held in parallel with the consultation on whether the CMA should accept the UILs offered by the Parties.

22. The CMA did not receive any comments specifically in relation to whether the CMA should give consent to the Merger under paragraph 12 of the Final Order. Instead, the CMA only received comments on the Parties' UILs, as well as more general comments, in particular from members of the public, as to whether the Merger should be approved or raising matters unrelated to the CMA's investigation. The CMA took these comments into account as relevant as part of its UIL Final Acceptance Decision. As set out in that decision, the CMA did not consider the third-party comments to change its preliminary view that the UILs would be acceptable.[15]

---

[14] See paragraph 16 of the Final Order explanatory note (publishing.service.gov.uk), which explains that, as an exception to the general prohibition, the Final Order provides that the CMA may grant its written consent for a transaction between Microsoft and Activision. This provision permitting the CMA's consent to be sought in relation to a particular proposed transaction is without prejudice to the right to request the CMA to vary or revoke the Final Order on the basis that there has been a change of circumstances, and the CMA's standard merger control processes.

[15] See the UIL Final Acceptance Decision available on the case page: Microsoft / Activision Blizzard (ex-cloud streaming rights) merger inquiry.



**CMA assessment**

23. The CMA has considered whether allowing the Merger, together with the Parties' UILs, by granting this consent would undermine the effectiveness of the Final Order, in terms of meeting its aim to remedy the SLC in the market for cloud gaming services in the UK and its resulting adverse effects as detailed in the Final Report.

24. As set out above, the Final Report found that, by acquiring the whole of Activision, Microsoft would have the ability and incentive to use Activision's content to foreclose current and future rival cloud gaming service platforms and, as a result, that the First Proposed Merger may be expected to result in an SLC in cloud gaming services in the UK.

25. Since the Final Report, Microsoft announced that it proposed acquiring Activision excluding Activision's non-EEA cloud streaming rights. Immediately prior to the Merger, and pursuant to the Ubisoft Divestment Agreement, the Activision Streaming Rights will be divested to Ubisoft. The Merger aims to prevent the concerns that the CMA found in the Final Report from arising. By divesting the Activision Streaming Rights to Ubisoft, the Merger aims to establish Ubisoft as a key supplier of content to cloud gaming services, to replicate the role that Activision would have played in the market absent the Merger.

26. Notwithstanding the largely self-standing nature of the assets being transferred to Ubisoft, the CMA's Phase 1 Decision found residual concerns relating to the possibility for certain provisions within the Ubisoft Divestment Agreement to be circumvented, terminated, or not enforced.[16] Consequently, the Phase 1 Decision found residual concerns that Microsoft could still engage in strategies in order to foreclose cloud gaming rivals after the Merger, and that the Merger may be expected to result in an SLC as a result of vertical effects in cloud gaming services in the UK.

27. The Parties' UILs aim to ensure that the Ubisoft Divestment Agreement is fully implemented, and enable the CMA to monitor and, if necessary, enforce the Parties' compliance with the UILs. In the UIL Final Acceptance Decision, the CMA concluded that the Parties' UILs are clear-cut and appropriate to remedy, mitigate or

---

[16] See the Phase 1 Decision available on the case page: Microsoft / Activision Blizzard (ex-cloud streaming rights) merger inquiry.



prevent the SLC identified in the Phase 1 Decision and any adverse effects resulting from it.[17]

28. There have therefore been significant changes to the proposed transaction as considered at the time of the Final Order, particularly in terms of the planned nature of the Merger when combined with the Parties' UILs, which ensure that the competition concerns identified in the Final Report no longer arise. Therefore, the CMA considers that the Merger, when combined with the Parties' UILs, is unlikely to undermine the effectiveness of the Final Order in achieving its original aim to remedy the SLC in the market for cloud gaming services in the UK and its resulting adverse effects as detailed in the Final Report.

29. The CMA notes that, to ensure that the Merger does not give rise to the competition concerns identified in the Final Report, the Ubisoft Divestment Agreement must be completed. Accordingly, the CMA considers it appropriate to make this consent conditional on the Ubisoft Divestment Agreement first completing.

30. Therefore, in light of the above, the CMA has decided that it would be appropriate to give consent to the Parties under paragraph 12 of the Final Order, conditional on the Ubisoft Divestment Agreement completing ahead of the Merger completing.

## Decision

31. The CMA gives its consent to the Merger under paragraph 12 of the Final Order.

**Martin Coleman, as Chair of the Microsoft and Activision Merger Inquiry Order Sub-Committee**
**Competition and Markets Authority**
**13 October 2023**

---

[17] See the UIL Final Acceptance Decision available on the case page: Microsoft / Activision Blizzard (ex-cloud streaming rights) merger inquiry.