
July 19, 2024

**VIA ECF FILING**

Molly C. Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 Seventh Street
San Francisco, CA 94103

      **Re: *Federal Trade Commission v. Microsoft Corp.*, No. 23-15992**

Dear Ms. Dwyer:

      The FTC's Rule 28(j) letter presents a misleading, extra-record account of the facts and is a continuation of the agency's attempts to reinvent its case on appeal.

      Earlier this month, Microsoft announced changes to its gaming subscription service, Game Pass, to provide consumers valuable options at different price points. Microsoft is offering a new service tier, Game Pass Standard, which offers access to hundreds of back-catalog games *and* multiplayer functionality for $14.99/month. It is wrong to call this a "degraded" version of the discontinued Game Pass for Console offering. That discontinued product did not offer multiplayer functionality, which had to be purchased separately for an additional $9.99/month (making the total cost $20.98/month). While Game Pass Ultimate's price will increase from $16.99 to $19.99/month, the service will offer more value through many new games available "day-and-date." Among them is the upcoming release of *Call of Duty*, which has never before been available on a subscription day-and-date.

      The FTC barely mentioned subscription at trial, instead focusing on the theory that Microsoft would withhold *Call of Duty* from Sony's console. Ans.Br.18-19, 26-27. The district court correctly rejected that theory, which is now further eroded by Microsoft and Sony's ten-year agreement to keep *Call of Duty* on PlayStation—a contract Sony was "thrilled" to enter.[1] While the FTC has now tried to shift focus to its alleged subscription market, its letter does not map onto its arguments below. Setting aside that it is common for businesses to change service offerings over time, the FTC's case in *all* of its alleged markets has always been premised on vertical foreclosure, *i.e.*, that Microsoft would withhold *Call of Duty* from rivals and therefore harm competition. But even in the alleged subscription market, *Call of Duty* is not being withheld from anyone who wants it. *See* Sealed Ans. Br.24-25, 42. And there remains no

---

[1] https://www.tweaktown.com/news/97049/sony-was-thrilled-to-sign-call-of-duty-deal-with-microsoft/index.html.

evidence anywhere of harm to competition: Sony's subscription service continues to thrive, even as they put few new games into their subscription day-and-date, unlike Microsoft.

The transaction thus continues to benefit competition and consumers—exactly what the district court correctly found.

Respectfully submitted,

_____
Rakesh Kilaru